**J.K. WATTS, Petitioner-Appellant,**

v.

**UNION PACIFIC RAILROAD COMPA-NY, Respondent-Appellee.**

**No. 84–2566.**

United States Court of Appeals, Tenth Circuit.

July 7, 1986.

Donald F. D'Antuono of Tallmadge, Tallmadge, Wallace & Hahn, Denver, Colo. (Charles A. Collins of Stone, Ribble, Bremseth, Meyer & Wood, Minneapolis, Minn., with him on briefs), for petitioner-appellant.

Arun Das (John J. Mullins, with him on brief), of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for respondent-appellee.

Before HOLLOWAY, Chief Judge, TIMBERS,* Senior Circuit Judge, and BALDOCK, Circuit Judge.

BALDOCK, Circuit Judge.

Appellant J.K. Watts was employed as a locomotive engineer by the appellee Union Pacific Railroad Company (Railroad). On September 19, 1981, appellant was arrested for possession, use and delivery of cocaine. The crime occurred while appellant was off duty and away from the Railroad's property.[1] On October 22, 1981, appellant pleaded guilty to a violation of Wyo.Stat. § 35-7-1031(c), possession of a controlled substance, and the remaining charges were dismissed. He was fined $500 and sentenced to 15 days in the Laramie County jail. The jail sentence was suspended, and he was placed on six months probation.

By letter dated November 12, 1981, the Railroad advised appellant that it had scheduled a disciplinary hearing to determine whether his arrest and conviction violated company rules. A hearing was conducted on November 17, 1981, by a division trainmaster of the Railroad. Appellant was represented by the chairman of the Cheyenne Local of the Brotherhood of Locomotive Engineers. Appellant was notified by letter dated November 18, 1981, that his employment was terminated because his arrest and conviction for possession of cocaine was "conduct unbecoming to an employee of the Union Pacific in violation of General Rule B and Operating Rule 700." Record vol. II at Carrier's Exhibit C.

After various requests for reinstatement were denied, appellant submitted the matter to Public Law Board 2975 (the Board).[2] After a hearing, the Board rendered its decision, Award Number 9, on December 8, 1982, affirming appellant's dismissal. The Board found that appellant's involvement with drugs and his arrest and conviction for possession of cocaine, were "unbecoming of an employee" and threatened "the safety of Carrier's operation, its employees and the public." Record vol. I at 37. The Board also noted that appellant had been dismissed for a Rule G violation (under the influence of alcohol while on duty) in 1979.

An appeal was filed on April 10, 1984, in the federal district court in Colorado. A hearing was held on October 26, 1984, and a decision was rendered the same day. Appellant argued that his dismissal for violating Rule 700 amounts to a change in working conditions and constitutes a "major dispute" which requires negotiation. In an oral opinion after argument, the district court concluded that the Railroad merely interpreted Rule 700, that a conviction for possession of cocaine clearly comes within the language of the Rule, and affirmed the Board's decision.

On appeal, appellant asserts that appellee's interpretation of Operating Rule 700 constitutes a major change in working conditions, that there has been no showing of a violation of Rule 700 because there has been no proof of loss of goodwill by the Railroad, and that the company violated his right to due process.

■ Appellant's reinstatement action arises under the Railway Labor Act, 45 U.S.C. §§ 151–188. The Act provides a mechanism for resolving minor disputes between railroad employees and their employers. The National Railroad Adjustment Board was established to resolve those disputes through arbitration. 45 U.S.C. § 153 First (i). The Public Law Board serves as an expeditious alternative forum to the Na-

* The Honorable William H. Timbers, United States Senior Circuit Judge for the Second Circuit, is sitting by designation.

1. Appellant was arrested across from the Union Pacific Depot in Cheyenne, Wyoming.

2. The Public Law Board was created by agreement between the Brotherhood of Locomotive Engineers and the Union Pacific Railroad Company (Eastern District) pursuant to 45 U.S.C. § 153 Second. The Board was established to resolve disputes otherwise referable to the National Railroad Adjustment Board. Board 2975 consisted of three members: the director of labor relations for Union Pacific, the vice president of the Brotherhood of Locomotive Engineers, and a neutral member who served as the board chairman.

tional Railroad Adjustment Board. *Brotherhood v. St. Louis S.W. Ry.*, 676 F.2d 132, 135 n. 2 (5th Cir.1982). Reinstatement actions are within the exclusive jurisdiction of the National Railroad Adjustment Board or special boards of adjustment such as the Public Law Board in this case. *Slocum v. Delaware, Lackawanna and Western Railroad*, 339 U.S. 239, 244, 70 S.Ct. 577, 579–80, 94 L.Ed. 795 (1950).

■ 45 U.S.C. § 153 Second provides that the Board's decisions "shall be final and binding upon both parties to the dispute ...." An adverse decision may be appealed to the federal district court under limited circumstances: (1) when the Board fails to comply with the requirements of the Railway Labor Act, (2) when the Board acts beyond its jurisdiction, and (3) when there is fraud or corruption by one of the Board members. 45 U.S.C. § 153 First (q);[3] *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam). We have noted previously that this standard of review is "among the narrowest known to the law." *Denver and R.G.W.R. Co. v. Blackett*, 538 F.2d 291, 293 (10th Cir.1976). The reviewing court is not to determine whether the Board's decision is correct, but may only consider its decision in light of the circumstances enumerated by the statute.[4] *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985).

Appellant asserts that the Railroad failed to comply with the provisions of the Railway Labor Act by dismissing him without proving harm to the company. He also argues that the Public Law Board exceeded its jurisdiction when it interpreted Rule 700 to apply to off duty drug law violations by employees. No allegation has been made that fraud or corruption is involved in this case.

■ Appellant argues that the Board failed to comply with the provisions of the Railway Labor Act because it sustained his dismissal in the absence of proof of harm to the company. He fails to indicate, however, how the Board's actions were inconsistent with the Act. The Railroad's decision to terminate appellant's employment was based on an interpretation of Rule 700. Rule 700 contains the following language:

> Employees will not be retained in the service who are careless of the safety of themselves or others, insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who do not conduct themselves in such a manner that the railroad will not be subjected to criticism and loss of good will, or who do not meet their personal obligations.

The Board agreed with the Railroad that appellant's conduct was sufficient to warrant dismissal pursuant to the rule. The Board's decision appears to be based not only on the "criticism and loss of good will" clause, but also on the "safety of themselves or others" provision. We are

---

**3.** This section provides in pertinent part:

On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

This standard of review is applicable to the Public Law Board. *Chernak v. Southwest Airlines Co.*, 778 F.2d 578, 580 (10th Cir.1985); *see also Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985).

**4.** This restrictive standard of review stems from a general policy favoring arbitration over litigation for the resolution of labor disputes. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 46, 94 S.Ct. 1011, 1018–19, 39 L.Ed.2d 147 (1974). The arbitration requirements of the Railway Labor Act were established to avoid interruption of the transportation industry. *Brotherhood of Railroad Trainmen v. Chicago River & I.R.*, 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). Arbitration is effective because it is quick and relatively inexpensive. A policy of judicial deference to arbitral decisions has developed, therefore, to maintain this prompt resolution of disputes and minimize delay. More expansive judicial review would be contrary to the purposes of the Act and frustrate the advantages of arbitration.

unable to find any conflict between the Board's ruling and the Railway Labor Act. Although we would be inclined to agree with the district court that Rule 700 does not require proof of actual criticism or loss of good will, the applicable standard of review does not permit us to make this interpretation.

■ Appellant asserts that the Board's affirmance of the Railroad's dismissal of appellant is "without foundation in reason or in fact." The Seventh Circuit has ruled that if a Board's decision is without foundation in reason or in fact, the Board is acting beyond the scope of its jurisdiction. *Kotakis v. Elgin, Joliet, and Eastern Ry. Co.*, 520 F.2d 570, 575–76· (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed. 388 (1975). Appellant's theory is that his conduct does not violate Rule 700 and the Board's decision, therefore, is unreasonable. As we have already observed, the Board's decision was based on three grounds: (1) that appellant's conduct was unbecoming of a railroad employee; (2) that his actions constitute a "most serious threat" to "the safety of the carrier's operation, its employees and the public," Record vol. I at 11; and (3) that he previously had been dismissed for alcohol abuse. We cannot conclude that the Board's decision is unreasonable.

■ Appellant also argues that his dismissal for violating Rule 700 for off duty conduct constitutes a change in the interpretation of the Rule, amounts to major change in working conditions, and implicates a major dispute which is beyond the jurisdiction of the Board. 45 U.S.C. § 152 Seventh prohibits the Railroad from changing the working conditions of its employees except through the procedures specified therein. Those procedures were not employed by the Railroad in this case.

Although the terms "major" and "minor" do not appear in the Railway Labor Act, they have been incorporated into the lexicon of the case law arising from the Act due to the Supreme Court's use of the terms in *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945), *aff'd on rehearing*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). In that case, the Court defined "minor" disputes as those which involve the "meaning or proper application of a particular provision" of an existing agreement. *Id.* at 723, 65 S.Ct. at 1290. *Barnett v. United Airlines*, 738 F.2d 358, 361 (10th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984). The National Railroad Adjustment Board or special boards of adjustment are authorized to review only minor disputes emanating from "grievances or out of the interpretation or application of agreements." 325 U.S. 723 n. 16, 65 S.Ct. 1290 n. 16; *Chambers v. Burlington Northern*, 692 F.2d 109, 111 (10th Cir.1982). "Major" disputes, on the other hand, are defined to include those involving the formation of agreements or "where it is sought to change the terms of one ...." 325 U.S. at 723, 65 S.Ct. at 1290. Major disputes involving changes in working conditions are within the jurisdiction of the National Mediation Board. 45 U.S.C. § 155 First (a); *St. Louis S.W. Ry. Co. v. Brotherhood of R.R. Signalmen*, 665 F.2d 987, 990 (10th Cir.1981), *cert. denied*, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982).

Appellant contends that the application of Rule 700 to his conviction for off duty drug possession constitutes a major change in working conditions. He notes that the rule had not been applied to off duty drug use until recently and that it was amended after his dismissal to encompass such conduct. Rule 700 was revised to specifically prohibit conduct leading to a conviction for a drug offense. Appellant's conduct, however, fits within the literal meaning of Rule 700 as it existed at the time of his dismissal. We do not believe the Railroad should be penalized for attempting to clarify and refine the language of the rule. Because we view the dispute as involving the interpretation of an existing rule, we conclude that appellant's termination is a minor dispute within the Board's jurisdiction.

To further support his argument, appellant refers to two district court decisions

wherein drug and alcohol surveillance and testing programs were found to constitute changes in working conditions. *Brotherhood of Locomotive Engineers v. Burlington Northern R. Co.*, 620 F.Supp. 163 (D.Mont.1985) and *Brotherhood of Maintenance of Way Employees v. Burlington Northern R. Co.*, 642 F.Supp. 41 (N.D.Iowa 1985). Those cases involved comprehensive programs designed to identify drug users and locate drugs at the workplace. This case, on the other hand, involves the application of an existing rule to an employee who has been convicted of a drug offense. We fail to see how the cases cited are analogous to the present one and cannot conclude that the Railroad's interpretation and application of Rule 700 affects a change in working conditions.

When in doubt, courts have construed railroad labor disputes as "minor," rather than as "major." *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d at 920. In this case, we have no doubt that this dispute involves the meaning and application of an existing rule and, therefore, conclude that it is a minor dispute within the Board's jurisdiction.

■ Appellant's final argument is that he was denied due process because he was not permitted to be represented by counsel at the Railroad's initial disciplinary hearing and that his dismissal is arbitrary and capricious. The due process clause of the fifth and fourteenth amendments applies only to governmental activities and not those of a non-governmental entity such as the Railroad in this case. *Murray's Lessee v. Hoboken Land and Improvement Co.*, 18 How. 272, 59 U.S. 272, 15 L.Ed. 372 (1855). Although appellant may be entitled to representation by an attorney when appearing before the Board, 45 U.S.C. § 153 First (j), he has no similar right associated with company disciplinary hearings. *Edwards v. St. Louis-San Francisco R. Co.*, 361 F.2d 946, 954 (7th Cir.1966). And while due process protects appellant from arbitrary and capricious decisions by govern-

ment administrators, he does not enjoy constitutional protection from the Railroad's decision to terminate his employment. The due process clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

Affirmed.