**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, Plaintiff,**

v.

**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant.**

No. 93–2044–JWL.

United States District Court,
D. Kansas.

Oct. 4, 1993.

John J. Blake, Blake & Uhlig, P.A., Kansas City, KS, Richard S. Edelman, William G. Mahoney, Donald F. Griffin, Highsaw, Mahoney & Clarke, P.C., Washington, DC, for plaintiff.

Stephen Phillips, Paul R. Hoferer, The A.T. & S.F. Ry. Co., Topeka, KS, Guy Vitello, The Atchison, Topeka & Santa Fe Railway Co., Schaumburg, IL, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I.  Introduction

In this matter plaintiff International Brotherhood of Boilermakers, Blacksmiths, Iron Ship Builders, Forgers and Helpers ("IBB") seeks judicial review of an award of a Special Board of Adjustment established between IBB and defendant Atchison, Topeka and Santa Fe Railway Company ("Santa Fe") pursuant to Section 3 Second of the Railway Labor Act, 45 U.S.C. § 153 Second ("RLA").  The matter is currently before the court on IBB's motion for summary judgment (Doc. # 5) and Santa Fe's cross motion for summary judgment (Doc. # 15).

In its motion for summary judgment IBB asserts that the award must be set aside and the matter remanded for further arbitration because the award is not confined to matters within the scope of the Board's jurisdiction; the award fails to comply with the requirements of the RLA; and it is otherwise without basis in reason or fact.  In its cross motion for summary judgment, Santa Fe contends that there is no basis for review of the arbitration award because the award complies with the requirements of the RLA and was within the arbitrator's jurisdiction.  Following a thorough review of the parties' pleadings and relevant authorities, the court finds that the Board's award should be affirmed.  Therefore, IBB's motion for summary judgment is denied and Santa Fe's cross motion for summary judgment is granted.

## II. Factual Background

On December 21, 1987, Santa Fe posted a notice to its Cleburne shop employees offering, to a limited number of employees on a first come, first serve basis, an opportunity to terminate their employment in return for $20,000. Santa Fe required applicants for that voluntary resignation program ("VRP") to waive all claims and rights under applicable collective bargaining agreements as well as any other claims against Santa Fe.

During the four months prior to the buyout offer, Santa Fe had furloughed a number of shop craft employees at its Cleburne facility. Employees were, therefore, concerned about their job security, and many rushed to accept the buyout. Over two hundred Cleburne employees accepted the buyout offer.

On January 12, 1988, six of Santa Fe's shop craft unions, including the IBB, filed suit in the Federal District Court for the Northern District of Texas seeking a declaratory judgment and injunctive relief against the VRP. IBB asserted, among other causes of action, that in offering the VRP, Santa Fe violated RLA § 2 First, Second, Third, Fourth, and Ninth by dealing directly with Cleburne shop employees rather than negotiating through their designated representatives, the unions. Santa Fe argued that collective agreements with the unions permitted it to deal directly with individual workers to buy out their employment rights.

On October 26, 1988, the District Court entered an order dismissing the unions' complaint for lack of jurisdiction. *See Brotherhood of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 703 F.Supp. 597 (N.D.Tex.1988). The District Court found that, since the collective agreements between Santa Fe and the unions arguably permitted Santa Fe's buyout program, the case involved a "minor dispute" subject to compulsory arbitration under the RLA.

On appeal, the United States District Court of Appeals for the Fifth Circuit affirmed the District Court's decision that it lacked jurisdiction of the IBB's complaint. The court agreed with the District Court's determination that Santa Fe had presented an arguable basis that its buyout program was permitted under its collective bargaining agreements with the unions, thus making the dispute a minor one subject to arbitration. *See Brotherhood of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463 (5th Cir.1990).

On November 29, 1990, IBB filed a claim under the grievance procedures in its collective bargaining agreement with Santa Fe challenging the VRP. The dispute remained unresolved and on July 2, 1992, Santa Fe informed the National Mediation Board ("NMB") that Santa Fe and IBB wished to arbitrate their dispute. On July 8, 1992, the NMB authorized Dr. Edward L. Suntrup to hear the dispute. The parties presented their dispute to Dr. Suntrup at a hearing held on July 21, 1992. On November 30, 1992, Dr. Suntrup issued an award denying the IBB's claim, finding that the labor contract between IBB and Santa Fe allowed Santa Fe to implement the VRP. In his findings, Dr. Suntrup stated:

> The parties possess no language of contract dealing with buyouts, and that there is sufficient evidence of a past and prevailing practice of offering buyouts by the company, and by applying applicable arbitral principles, the arbitrator concludes that the company was not in violation of a contract when it made buyout offers to employees in November of 1987 at Cleburne Shops.... The parties requested of this forum that it interpret its labor contract. That task has been fulfilled according to accepted principles of arbitration....

Dr. Suntrup declined to engage in interpretation of the RLA or case law dealing with "direct dealing" under the RLA, noting that his job was contractual interpretation and the parties had not submitted any statutory issues for his consideration.

## III. Scope of Review of RLA Arbitration Awards

IBB's action arises under the RLA, 45 U.S.C. §§ 151–158. The RLA provides a mechanism for resolving minor disputes between railroad employees and their employers. The National Railroad Adjustment Board was established to resolve those dis-

putes through arbitration. 45 U.S.C. § 153 First (i). 45 U.S.C. § 153 First (m) provides that arbitration awards "shall be final and binding upon both parties to the dispute...." "An adverse decision may be appealed to the federal district court under limited circumstances: (1) when the Board fails to comply with the requirements of the Railway Labor Act, (2) when the Board acts beyond its jurisdiction, and (3) when there is fraud or corruption by one of the Board members." *Watts v. Union Pacific R. Co.,* 796 F.2d 1240, 1243 (10th Cir.1986) *citing Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The Tenth Circuit has noted that this review is "among the narrowest known to the law." *Denver and Rio Grande Western R. Co. v. Blackett,* 538 F.2d 291, 293 (10th Cir.1976). "The reviewing court is not to determine whether the Board's decision is correct, but may only consider its decision in light of the circumstances enumerated by the statute." *Watts,* 796 F.2d at 1243 *citing Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry. Co.,* 768 F.2d 914, 921 (7th Cir.1985).

## IV. Discussion

■ IBB contends that the arbitration award should be overturned because the arbitrator failed to comply with the requirements of the RLA when fashioning the award. IBB contends that the arbitrator erred because he expressly failed to consider in fashioning the award whether the VRP violated the RLA's prohibition against employer direct dealing. IBB contends that in offering the VRP, Santa Fe violated RLA §§ 2 First, Second, Third Fourth and Ninth by dealing directly with employees rather than negotiating through their designated representatives, the unions. IBB argues that by focusing exclusively on interpreting the parties' collective bargaining agreement and expressly declining to consider RLA case law precedent regarding employer direct dealing, the arbitrator's award finding the VRP to be valid fails to comply with the prohibition against direct dealing contained in the RLA and therefore should be overturned.

Contrary to the IBB's contentions, the court finds that the arbitrator's exclusive reliance on interpretation of the parties' collective bargaining agreement in determining the validity of the VRP was proper. This is because the District Court of the Northern District of Texas and the Fifth Circuit had already determined that the VRP did not violate any direct dealing prohibitions of the RLA when they found that the dispute was minor.

The Supreme Court first articulated the distinction between major and minor disputes in *Elgin, J. & E.R. Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). That distinction was further developed by the Supreme Court in *Consolidated Rail Corp. v. Labor Executives' Assn.,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). The Court in *Consolidated* explained that:

> [T]he major dispute category ... "relates to disputes over the formation of collective bargaining agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy...." *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289.
>
> In contrast, the minor dispute category ... [relates to] dispute[s] arising or growing "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." This second category of disputes "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one...." *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289.
>
> A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees. § 3 Second. The Board ... has exclusive jurisdiction over minor disputes....

*Consolidated,* 491 U.S. at 302–303, 109 S.Ct. at 2479–80 (some citations omitted).

In the prior litigation, the District Court for the Northern District of Texas and the Fifth Circuit determined that the dispute between the IBB and Santa Fe was minor under the *Consolidated* standard. This was due to Santa Fe's contention that the collective bargaining agreements between the parties contained implied terms—specifically, the past practices of the parties including previous resignation offerings and individually negotiated resignation agreements—which would allow the VRP. Because Santa Fe had made an arguably justified contention that the VRP was permitted under the parties' collective bargaining agreements, the dispute was minor. *Brotherhood of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1467 (1990).

IBB argues that despite the Fifth Circuit's determination that the dispute was minor, the arbitrator could not rely merely on the terms of the parties' collective agreements in determining his award, but was obligated to consider whether the VRP violated the RLA's prohibition against direct dealing. IBB argues that by contending that the dispute was a minor one covered by the parties' collective agreements, Santa Fe was able to convert the dispute into a minor dispute subject to arbitration and totally avoid review by either the courts or the arbitrator of whether the VRP violated the RLA's prohibition against direct dealing.

■ The court finds that IBB's arguments are based on an erroneous interpretation of the RLA's prohibition against direct dealing and a faulty understanding of the Fifth Circuit's reasoning in determining the dispute was minor under the *Consolidated* standard. In reaching its determination that the dispute was minor, the Fifth Circuit specifically concluded that if Santa Fe's contention that the VRP was permitted under its collective agreements with the unions was correct, then there was no violation of the RLA. *Id.*, 894 F.2d at 1467. The Fifth Circuit also specifically rejected IBB's contention that the VRP

violated any RLA prohibition against direct dealing, noting that "[t]he union's assertion in this regard is contrary to a body of case law that permits unions to waive statutory rights under the RLA." *Id.* at 1465.[1] Because the union was free to waive any prohibition against direct dealing, it follows that if the VRP was authorized pursuant to the terms of the parties' collective bargaining agreements, any claim that the VRP violated any RLA prohibition on direct dealing would have been waived. For this reason, the arbitrator properly did not need to analyze any issues relating to whether the VRP violated any RLA direct dealing prohibitions, he needed only to analyze whether the VRP was authorized pursuant to the parties' collective bargaining agreements. This the arbitrator did. Therefore, the court finds no grounds to overturn the arbitrator's award based on his failure to consider RLA direct dealing precedent in fashioning his award.

■ IBB's second contention is that the arbitrator exceeded his jurisdiction in fashioning his award because he "changed the IBB—Santa Fe CBA by adding an implied reserved management rights clause to the agreement; fashioned his own statement of the dispute despite the parties' agreement; and failed to determine the contractual issues presented to him for resolution." The court finds no merit to any of these contentions.

The arbitrator in this case was instructed to analyze the parties' agreements to determine whether they contained an implied term which would allow Santa Fe's implementation of the VRP. The arbitrator's award did not impermissibly "change" the parties collective bargaining agreement. Rather, the arbitrator found that Santa Fe's past and prevailing practices of offering buyouts gave rise to an implied term in the collective bargaining agreements allowing Santa Fe to implement the VRP.

■ Similarly, the court finds no merit to IBB's contention that the arbitrator failed to

---

1. In support of its conclusion that the union could waive its members' statutory rights under the RLA the Fifth Circuit cited *Metropolitan Edison Co. v. N.L.R.B.*, 460 U.S. 693, 705–06, 103 S.Ct. 1467, 1475–76, 75 L.Ed.2d 387 (1983) in which the Supreme Court held that "[t]his Court

has long recognized that a union may waive a member's statutorily protected rights, including his 'right to strike'.... Thus, a union may bargain over its members' economic rights, but it may not surrender rights that impair employees' choice of their bargaining representative."

**1298**

determine the contractual issues presented to him for resolution, or that he erred by fashioning his own statement of the dispute. IBB's contention arises mainly from the fact that the arbitrator did not rely on either question at issue submitted by the parties, but relied on his own question framing the issues. The IBB's question at issue was the following:

Can the Santa Fe Railway establish that it has express or implied contractual authority to deal directly with its Cleburne, Texas, shop employees, represented by the International Brotherhood of Boilermakers and Blacksmiths, Forgers and Helpers (sic) by offering unilaterally determined lumpsum payments in exchange for the employees surrendering their collectively bargained rights?

If the answer to the above is no—shall any resignations signed as a result of such unauthorized unilateral offers act as a waiver of employees' collectively bargained rights?

The Santa Fe's question at issue was the following:

Did the Santa Fe railway Company violate the Labor Agreement between the International Brotherhood of Boilermakers & Blacksmiths, Forgers & Helpers (sic) and the Carrier by offering a voluntary resignation program to its employees at Cleburne, Texas, in December 1987?

The arbitrator framed the dispute as follows:

Was the company in violation of the express or implied intent of the labor agreement it has with the union when it offered lump sum payments to members of this craft in December of 1987 as part of its voluntary resignation program at its Cleburne, Texas facility? If so, what should the remedy be?

The court finds that there is no essential difference between the issues submitted by the parties and the issue as framed by the arbitrator. It is clear from the award that the arbitrator addressed whether the VRP violated express or implied terms of the collective bargaining agreements. This is the issue the parties presented before him. IBB places great emphasis on the arbitrator's use of the word "intent" in formulating the issue,

arguing that the use of this word created a new issue. The court finds that while "intent" might not have been the most fortuitous word choice, the arbitrator's award is based on an analysis of whether the VRP was allowed pursuant to express or implied contractual provisions in the parties' collective bargaining agreements. The difference between the issue as framed by the parties and the issue as framed by the arbitrator is at most semantic, and is insufficient to overcome the presumption that the arbitrator's award was within the submission. *See CSX Transp., Inc. v. United Transp. Union,* 950 F.2d 872, 877 (2nd Cir.1991).

■ IBB's final argument is that the arbitrator found nonexistent facts regarding the IBB's alleged acquiescence in prior Santa Fe buyouts of employees represented by other unions. RLA Section 3, First (q) makes clear that the arbitrator's factual "findings ... shall be conclusive on the parties...." 45 U.S.C. § 153, First (q). "Disputes of fact ... may not be addressed by the district court, even if the court is convinced that the arbitrator committed serious error." *Air Line Pilots Ass'n v. Aviation Associates Inc.,* 955 F.2d 90, 93 (1st Cir.1992). The Seventh Circuit has ruled that if a Board's decision is without basis in reason or fact, the Board is acting beyond the scope of its jurisdiction. *See Kotakis v. Elgin, Joliet, and Eastern Ry. Co.,* 520 F.2d 570, 575–76 (7th Cir.1975). However, as stated before, the arbitrator's decision was based upon an interpretation that past practices, including previous resignation offerings and individually negotiated resignation agreements, created implied terms in the parties' collective bargaining agreements which permitted the VRP. The court cannot conclude that the arbitrator's decision was without basis in reason or fact.

IT IS, THEREFORE, BY THE COURT ORDERED THAT plaintiff IBB's motion for summary judgment (Doc. # 5) is denied and defendant Santa Fe's cross motion for summary judgment (Doc. # 15) is granted. The arbitration award is hereby affirmed.

IT IS SO ORDERED.