Robert ROBINSON, Plaintiff,

v.

PUBLIC LAW BOARD NO. 5914, Union Pacific Railroad Company, and United Transportation Union, Defendants.

No. 99–K–841.

United States District Court,
D. Colorado.

Aug. 16, 1999.

Jeffrey Menter, Littleton, CO, for plaintiff.

Brenda J. Council, Omaha, NE, Diana C. Fields, Amy A. Sumner, Denver, CO, Daniel R. Elliott III, Assistant General Counsel, United Transportation Union, Cleveland, OH, David B. Kiker, Rossi, Cox, Kiker & Inderwish, Aurora, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction.*

Plaintiff Robert Robinson appeals to this court to review the decision of Public Law Board No. 5914 reinstating him to employment with Union Pacific Railroad in the state of Colorado without back pay or compensation for benefits lost. Defendant Union Pacific Railroad has moved to dismiss Plaintiff's first and third claims for relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Union Pacific Railroad argues this court lacks subject matter jurisdiction over Defendant's claims due to preemption under the Railway Labor Act, and Plaintiff fails to state a claim against the Public Law Board for which relief can be granted.

### II. *Background.*

Robert Robinson was working as a Hostler/Engineer for Southern Pacific Lines in Denver, Colorado on November 18, 1994. Around midnight on that date, Robinson caused an unauthorized reverse movement of a locomotive without any warning thereby endangering his Hostler Helper walking one unit ahead. An investigation of the incident by the Railroad led to Robertson's dismissal on November 28, 1994. United Transportation Union filed a complaint with the Railroad on Robinson's behalf seeking reinstatement with seniority, back pay, and benefits for time lost until Robinson's reinstatement. After much delay, a Public Law Board was convened pursuant to the mandatory arbitration procedures under the Railway Labor Act, 45 U.S.C. § 153 First (i) (1970), to hear Robinson's grievance over the discharge. Upon review of the case, the Board found sufficient evidence supporting Robinson's guilt. Based on Robinson's sixteen years of seniority and the finding the Hostler Helper was not in danger at the time of the incident, however, the Board further found the Railroad had acted unreasonably, arbitrarily, and capriciously in terminating Robinson. As such, on December 10, 1998, the Board ordered Robinson be reinstated. Given the seriousness of the charges and Robinson's careless actions, however, the Board imposed a lengthy suspension without back pay and retraining as a hostler prior to returning Robinson to service. Finally, the Board noted the length of time between the dismissal and the Board's hearing would be considered a sufficiently lengthy disciplinary suspension.

Robinson was retrained as directed by the Board, passed the certification rules exam and safety awareness training in March 1999, and returned to work on March 29, 1999. Nearly four and one-half years had passed between the Robinson's

dismissal and his return to work for the Railroads. During that time, Southern Pacific Lines merged with Union Pacific Railroad. On April 30, 1999, Robinson filed this action against Public Law Board No. 5914 (the Board), Union Pacific Railroad Company (the Railroad) successor to Southern Pacific Lines, and the United Transportation Union (the Union) alleging breach of the collective bargaining agreement, breach of the duty of fair representation, and failure to render a timely award. Robinson's basis for asking the court to set aside the Board's Order revolves around the time elapsed between his dismissal and reinstatement and the Union's refusal to allow independent outside counsel to represent Robinson during the proceedings between the Union, the Railroad, and the Public Law Board during that time. Robinson does not dispute the board's findings with respect to the initial incident but argues the lengthy disciplinary suspension without back pay is excessive given the infraction. As such, Robinson requests this court set aside the order of the Public Law Board and grant him reinstatement with the Railroad with back pay and benefits.

On May 3, 1999, this court issued an Order striking Robinson's Complaint. Plaintiff filed an Amended Complaint on May 6, 1999, which was not served on the Railroad until May 27, 1999. On June 16, 1999, the Railroad filed a Motion to Dismiss the first and third claims for relief in Robinson's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). On July 6, 1999, Robinson filed a Response to Union Pacific's Motion to Dismiss and Cross Motion for Summary Judgment. Robinson also filed a Motion to Amend Complaint. This court granted leave to amend the Complaint, Union Pacific Railroad filed a Motion to Dismiss Plaintiff's Second Amended Complaint on July 23, 1999, and the United Transportation Union filed an Answer to the Second Amended Complaint on July 28, 1999. Robinson filed a Response to Union Pacific Railroad's Second Motion to Dismiss on August 4, 1999. That motion to dismiss is now pending before the court.

### III. *Standard for Motion to Dismiss.*

In ruling on a Motion to Dismiss, I must assume as true all factual allegations and draw all reasonable inferences in favor of the pleader, *Johnson, II v. N.T.I., Div. of Colo. Springs Circuits,* 898 F.Supp. 762, 763 (D.Colo.1995). Dismissal is appropriate only when it appears Plaintiff is unable to prove any set of facts entitling it to relief. *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army,* 111 F.3d 1485, 1490 (10th Cir.1997). Additionally, the Federal Rules of Civil Procedure

> erect a powerful presumption against rejecting pleadings for failure to state a claim ... Granting defendant's motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

### IV. *Merits of Union Pacific Railroad's Motion to Dismiss Plaintiff's Second Amended Complaint.*

Robinson's first claim for relief alleges loss of income, fringe benefits, seniority and pension rights as a result of the Railroad's wrongful discharge and the Union's breach of its duty of fair representation. (Pl.'s Second Am.Compl. at 4). Robinson therefore asks the court to set aside the Public Law Board's Order and direct Robinson to be reinstated earlier with back pay and benefits, and award compensatory damages, prejudgment interest and attorneys fees. (*Id.*) Robinson's third claim for relief alleges harm resulting from the Public Law Board's failure to timely hold a hearing and make an award, and failure to set a date certain for reinstatement. (*Id.* at 7.) Robinson asks this court to set aside the Board's Order and reinstate Robinson

at an earlier date, awarding back pay and benefits along with prejudgment interest. (*Id.* at 7–8.) Defendant Union Pacific Railroad argues these claims are not within this court's jurisdiction and must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). (Def. Union Pacific Railroad's Mot. Dismiss Pl.'s Second Am.Compl. at 1.) The Railroad also argues Robinson's third claim against the Public Law Board for relief fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). (*Id.*)

■ The National Railroad Adjustment Board was created by 45 U.S.C. § 153 First (1970). The members of the board, through its four divisions, are charged with resolving disputes "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" 45 U.S.C. § 153 First (i) (1970). These disputes are to be

handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

45 U.S.C. § 153 First (i) (1970). The awards of the Adjustment Board

shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute. In case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award in the light of the dispute.

45 U.S.C. § 153 First (m) (1970). A petition for review of the Order of the Adjustment Board may be brought in the District

Court of the United States if "a carrier does not comply with an order of a division of the Adjustment Board," or "if an employee ... is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award ..." 45 U.S.C. § 153 First (p), (q) (1970).

On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q) (1970). Thus, the question of this court's jurisdiction is defined by whether this is the type of dispute described by the statute, and if so, whether the Board is fairly described as failing to comply with the requirements of the Act, failing to confine or conform its Order to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the Board. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

This is a dispute covered by the Railway Labor Act. The dispute arises between Robinson and Union Pacific Railroad over a grievance brought by the Union on Robinson's behalf. "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Id.* at 94, 99 S.Ct. 399. Congress therefore limited judicial review of Adjustment Board orders to the three specific grounds stated above; failure of the Board to comply with the requirements of the Act, failure to confine itself to matters within its jurisdiction, or fraud or corruption. *Id.* Robinson has alleged the Board's failure to comply with the require-

ments of the Act and corruption. (Pl.'s Second Am.Compl. ¶ 4–7 at 3–4.)

■ Upon filing a claim with the Adjustment Board, a three member public law board is established to hear the dispute and render findings of fact. 45 U.S.C. § 153 Second (1970). The board is composed of a member designated by the Union, a member designated by the Railroad, and a Neutral member agreed to by the first two members or designated by the Mediation Board. *Id.* Robinson complains of the extensive length of time necessary to select the Neutral member and convene the Board to investigate his grievance. (Pl.'s Second Am.Compl. ¶ 4, at 3.) Robinson argues the Neutral member "was to be selected within 30 days and The Board was to meet within 30 days thereafter subject to the availability of the neutral to resolve this controversy ..." (*Id.*) This time restriction is nowhere specified in the Railway Labor Act. The Agreement between the Union employees and the Railroad does contain a thirty day deadline subject to the availability of the Neutral. As explained by *Sheehan* however, Congress did not make review of the final and binding findings of the Board available in federal court due to alleged violations of the Union agreement with the Railroad. *Sheehan,* 439 U.S. at 93, 99 S.Ct. 399. Rather, violation of the Union's duties under the employee's agreement with the Railroad results in a breach of the duty of fair representation claim against the Union which is the subject of Robinson's second claim for relief. (Pl.'s Second Am.Compl. ¶ 4, at 5–6.) Although the two-year time between the filing of the complaint and meeting of the Board was extensive, there are no specified deadlines for this procedural step in the Act and no deadline was therefore missed by the Railroad or the Public Law Board justifying jurisdiction to review the Board's Order.

■ The Railway Labor Act specifies awards of the Board "shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named." 45 U.S.C. § 153 Second (1970). Robinson interprets this language of the statute to require the Board's Order to "specify a date certain for return to work." (Pl.'s Second Am. Compl. ¶ 5, at 3.) As the Order directed Robinson to be reinstated after being retrained as a hostler, Robinson complains the Order did not set a specific date by which time the training and reinstatement must be completed. (*Id.*) Although he was retrained and reinstated, Robinson alleges the Board's failure to specify a "date certain" in its Order harmed him by delaying his reinstatement. (*Id.*) This interpretation of the statute is erroneous. The Act does not require the Board to set a specific date within its Order, but rather requires the specified party to comply with the Board's Order by the specified date if one is given. Robinson was retrained and reinstated per the Board's Order at the convenience of both the Railroad and Robinson, and the Board's decision not to set a specific deadline by which these events were to have taken place does not constitute a failure to comply with the provisions of the Act giving this court jurisdiction to review or set aside the Order.

The *Sheehan* court also recognized fraud or corruption as a third ground enabling judicial review of orders made by the Adjustment Board. *Sheehan,* 439 U.S. at 93, 99 S.Ct. 399. The Tenth Circuit expanded on this ground in a case involving collusion between the Union and the Railroad. *Richins v. Southern Pacific Company,* 620 F.2d 761 (1980). In *Richins,* the court held the allegations of collusion created a hybrid case distinct from a law suit against the Union for breach of its duty of fair representation or against the Railroad for grievances brought by an employee. *Id.* at 762. In such cases, the *Richins* court held concerns of wasted judicial resources and the possibility of inconsistent results warranted the progression of these cases in federal court such that "[a]bsent statutory command, we are reluctant to grant

to the Board jurisdiction over fair representation cases and, absent clearer direction from the Supreme Court, we are unwilling to require bifurcated jurisdiction of hybrid cases." *Id.* at 763.

■ Robinson attempts to invoke this hybrid jurisdiction here by stating this "is a hybrid breach of collective bargaining agreement/breach of duty of fair representation case ..." (Pl.'s Second Am.Compl. at 1.) Robinson fails to make any allegations or state any facts suggesting collusion between the Union and the Railroad. There are therefore no facts supporting the policy reasons described by the Tenth Circuit in *Richins* necessitating hybrid jurisdiction. This case could be separated into distinct cases against the Union and the Railroad in which the minor claims against the Railroad would be within the jurisdiction of the Public Law Board. Indeed, this is the effect of the Railroad's Motion to Dismiss Robinson's first and third claims. Without specifying a violation of the Railway Labor Act by the Board or alleging collusion between the Union and the Railroad, this court lacks subject matter jurisdiction over Robinson's first claim against the Railroad and third claim against the findings of the Public Law Board. Thus, Reading the complaint in the light most favorable to Robinson, there are no allegations, nor facts supporting allegations, bestowing jurisdiction upon this court to review or set aside the Public Law Board's Order. Robinson's first and third claims are not within the subject matter jurisdiction of this court and must therefore be dismissed pursuant to Fed. R.Civ.P. 12(b)(1).

The Railroad also argues Robinson's third claim for relief fails to state a claim against the Board upon which relief can granted. (Def. Union Pacific Railroad's Mot. Dismiss Pl.'s Second Am.Compl. at 10–11.) The Railroad contends the Board's order to reinstate Robinson after his retraining as a hostler was the Board's specification of a reinstatement date. (*Id.*) Robinson was reinstated two weeks after successfully completing his retraining in order to give his interim employer two weeks notice. (*Id.*) As such, the Railroad argues Robinson has failed to state a cognizable claim against the Board for its retraining and reinstatement requirement and must be dismissed pursuant to Fed. R.Civ.P. 12(b)(6). This court may not consider the merits of this argument however, as it lacks subject matter jurisdiction over Robinson's third claim as explained above.

V. *Conclusion.*

Plaintiff Robinson is an employee of Union Pacific Railroad originally dismissed for breaking safety rules thereby endangering a fellow employee. Robinson filed a grievance through the United Transportation Union that was eventually transferred to arbitration by a three member Public Law Board as required by the Railway Labor Act, 45 U.S.C. § 153 First and Second (1970). By the Board's Order, Robinson was reinstated to his employment position with the Railroad following retraining and a lengthy disciplinary suspension. Robinson has filed a complaint against the Union, the Railroad, and the Public Law Board seeking to have the Board's Order set aside in favor of an award of back pay, seniority, benefits, and interest for the time of his suspension. The Railroad has filed a Motion to Dismiss Robinson's first and third claims for relief against the Railroad and the Public Law Board pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) arguing lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

The Railway Labor Act states the Board's Order is final and binding on both parties to the dispute. Further, the Supreme Court's analysis of the statute unequivocally states the Congressional intent was to keep disputes such as the instant case "within the Adjustment Board and out of the courts." *Sheehan,* 439 U.S. at 94, 99 S.Ct. 399. The Court has therefore held federal courts lack subject matter jurisdiction to review orders of the Adjustment Board unless the Adjustment Board

has failed to comply with requirements of the Act, failed to confine its own jurisdiction to matters within the Act, or fraud or corruption. In the absence of one of these exceptions, the Court has clearly stated the plain language of the Act precludes judicial review of the Board's orders.

Robinson has alleged failures by the Union and the Board resulting in his lengthy suspension and delayed reinstatement to employment with the Railroad. Despite the Board finding Robinson's actions were deserving of a lengthy disciplinary suspension corresponding to the time of his absence from the Railroad, Robinson argues the alleged failures by the Board to convene more quickly to render findings of fact on his grievance and issue an Order containing a specific date delayed his reinstatement resulting in lost back pay and benefits. None of the failures Robinson alleges the Board to have made in his case is expressly required by the statute. Since the Board has complied with the requirements of the Act and Robinson has not alleged extra-jurisdictional concerns by the Board or fraud or corruption, this court lacks jurisdiction to review or set aside the Board's Order or consider the merits of the Railroad's argument pursuant to Fed.R.Civ.P. 12(b)(6). Thus, Robinson's first and third claim for relief are dismissed for lack of subject matter jurisdiction.

Accordingly,

IT IS ORDERED THAT Defendant Union Pacific Railroad Company's Motion to Dismiss Plaintiff's first and third claims for relief in Plaintiff's Second Amended Complaint is GRANTED.

Plaintiff's second claim for relief against United Transportation Union is unaffected by this ORDER.